IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ILLINOIS
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL LYON, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 08 C 754 |
| ) | |
| SIGMUND A. EISENSCHENK, et al., ) | |
| ) | The Hon. Amy St. Eve |
| Defendants. ) | |

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION
TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

INTRODUCTION

Plaintiffs' opposition to the instant motion is based entirely on the contention that the allegations of their complaint are insufficient to establish that they were on "inquiry notice" of a potential securities fraud claim more than two years prior to their February 4, 2008 filing date. When an objective reasonable diligence standard is applied to the facts alleged, however, it is clear that Plaintiffs were on inquiry notice of the fraud which they claim no later than January 1, 2006. As such, dismissal is warranted because the sole federal claim is untimely.

ARGUMENT

In deciding a motion to dismiss a securities claim, a court must apply "an objective 'reasonable' diligence standard" to the facts alleged. *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 609 (7th Cir. 1995). Where plaintiffs have alleged facts which, taken as true, would have put a reasonable person on inquiry notice, they can literally plead themselves out of court. The standard for inquiry notice is far short of actually discovering proof of fraud. All that is needed to start the clock running is "simply that a reasonable investor would have believed that fraud was a possible explanation." *Whirlpool*, 67 F.3d at 610.

Plaintiffs claim lack of notice because Defendants were not obligated to provide Plaintiffs with the PVCT stock and warrants "until that stock was registered" and, as such, they "could not have known, until the PVCT stock was registered, that they were not getting what they bargained for and could not have been put 'on inquiry' prior to that time." (Opp., ¶ 16.) That argument
1586991v1

fails because it assumes that notice to Plaintiffs consists of actual proof of the alleged fraud, not merely that fraud is one reasonable explanation for the facts known to Plaintiffs.

Plaintiffs repeatedly cite Defendants' failure to provide them with any documentation that the $350,000 which they allegedly invested was used to purchase stock and warrants in PVCT, as Eisenschenk allegedly promised to do. (*see* Complaint, ¶ 9, 11(b), 13-16, 18, 22-26). The complaint is rife with allegations of Defendants' failure to provide any documentation whatsoever that Plaintiffs' money was used to purchase PVCT stock and warrants on their behalf upon receipt of their wired funds. (*id.*) Plaintiffs specifically allege that they believed that the funds "would be credited to each individual plaintiff's account and would be used ... specifically to purchase PVCT Stock and Warrants, which would be issued to each plaintiff upon registration..." (Complaint, ¶ 11(b)).[1] They claim to have receive nothing in writing warranting their continued belief in their purported expectations.

Critically, Plaintiffs do not allege that, after the wire transfers, they ever received any false statement or documentation misleading them about what their money had, in fact, been used for. All of the alleged "misrepresentations" were made before the investment and are clearly promissory in nature. (*See* Complaint, ¶¶ 10 and 11.) Plaintiffs essentially admit that they received no written receipt for, or other notice concerning, their funds or their expected investments. Regardless of their alleged disappointed expectations, any reasonable person who had transferred $150,000 and $200,000, respectively, to invest based solely on oral representations would have promptly insisted upon some written receipt or other evidence of the use of their funds. These Plaintiffs did not do so. They sought no information for almost two years.

Plaintiffs claim that they received no notice of what had happened to their money until November, 2007, when they admit that they learned the truth. (Complaint, ¶ 15). Critically, they learned these facts well within the two-year inquiry notice period. Approximately a month remained to have timely filed their federal claim. They waited three months to do so.

---

[1] Defendants, of course, dispute the truth of these allegations and deny that any fraud occurred. The dispute here is solely a contractual one about the agreed terms of the investment. Plaintiffs' ability to prove their claims, however, is not presently before the Court. All alleged facts must be taken as true.

Surprisingly, Plaintiffs' response accuses defendants of completely ignoring "the allegations of paragraphs 10, 11, 12 and 22, which characterize the nature of the transaction." (Opp., ¶ 15.) Although Defendants dispute that these paragraphs were previously ignored, they are more than happy to specifically address them now, as each of these paragraphs supports dismissal. Paragraph 10(c), for example, alleges that Defendants represented that "[u]pon wiring funds from Plaintiffs to resource equities, the stock and warrants would be purchased by an entity controlled by Eisenschenk..." Nowhere do Plaintiffs allege that these purchases were not in fact made by an entity controlled by Defendant Eisenschenk.

Paragraph 11(b) alleges, more specifically, that "[u]pon receipt of invested funds from Plaintiffs to Defendants, such funds would be credited to each individual Plaintiff's account and would be used . . . specifically to purchase PVCT stock and warrants . . ." Plaintiffs do not, however, allege that, in over two years, they ever obtained any documentation that they had individual "accounts" in any defendant entity. In fact, Plaintiffs admit that they did not expect that they were opening an account with a registered securities broker-dealer. (Complaint, ¶ 3.)

In paragraph 12, Plaintiffs allege that their funds were to be wired to accounts controlled by Defendant Eisenschenk "for the sole purpose of utilizing such funds to purchase PVCT stock and warrants for Plaintiffs . . ." In paragraph 22, they allege that Defendants "failed to disclose that they did not, and never intended to, purchase the PIPE securities for the Plaintiffs' account . . ." If Plaintiffs actually expected that they were opening an account in which securities were to be purchased and held in a fiduciary capacity for their benefit, they cannot explain why they received no written account agreement, no written receipt for their funds, no confirmation statements reflecting the securities purchases and no periodic (*i.e.* monthly) account statements reflecting their positions. The absence of any of these quite normal documents would have put any reasonable investor on notice, more or less immediately, that in fact securities had not been purchased to be held for their benefit in a segregated account, but that they had made some other type of investment. Any reasonable investor who transferred funds in December, 2005, and who never received any accounting for, or disclosure of the status of, their alleged personal account and invested funds (complaint, ¶ 15) would have begun to investigate whether they might have been the victim of a fraud well prior to February 1, 2006.

Given these admitted facts, and based on any reasonable reading of the allegations of Plaintiffs' complaint, their claim under the Exchange Act is indisputably time-barred and, as

1586991v1                                    3

such, must be dismissed. Because Plaintiffs' Exchange Act claim is the sole basis for subject matter jurisdiction, Plaintiffs' remaining claims must also be dismissed.

WHEREFORE, Defendants Sigmund Eisenschenk, Resource Equities, LLC and Thunder Bay Enterprises, LLC respectfully request that this Court enter an order dismissing Count I of Plaintiffs' Complaint pursuant to Rule 12(b)(6) and dismissing the remainder of Plaintiffs' complaint pursuant to Rule 12(b)(1).

> RESPECTFULLY SUBMITTED,
>
> SIGMUND EISENSCHENK,
> RESOURCE EQUITIES, LLC AND
> THUNDER BAY ENTERPRISES, LLC
>
> By: /s/ Daniel C. Curth
>     One of their attorneys

Leland W. Hutchinson (ARDC #1294873)
Daniel C. Curth (ARDC #6229090)
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 360-6000