IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ILLINOIS
NORTHERN DIVISION

MICHAEL LYON, et al.　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiffs,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　　)　　Case No. 08 C 754
　　　　　　　　　　　　　　　　　　　)
SIGMUND A. EISENSCHENK, et al.,　　　)　　The Honorable Amy St. Eve
　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants.　　　　　　　　　)

## DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFFS' COMPLAINT

Defendants Sigmund A. Eisenschenk ("Eisenschenk"), Resource Equities, LLC ("Resource") and Thunder Bay Enterprises, LLC ("Thunder") (collectively, "Defendants"), by their undersigned attorneys, and for their Answer And Affirmative Defenses to Plaintiffs' Complaint, state as follows:

1.　　Michael T. Lyon is an individual residing in Chicago, Cook County, Illinois and is the Trustee of the Michael T. Lyon Profit Sharing Plan ("Plan"). The Plan is a qualified employee benefit plan under the Employee Retirement Income Security Act ("ERISA") and is domiciled in Cook County Illinois.

ANSWER:　　Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 1 and thus demand strict proof thereof.

2.　　Plaintiff Richard Lane is an individual residing in Chicago, Cook County, Illinois.

ANSWER:　　Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in paragraph 2.

3.　　Defendant Sigmund A. Eisenschenk is a resident of Cook County, Illinois. Eisenschenk, on information and belief, is not a registered broker-dealer under the United States

Securities Exchange Act ("Exchange Act") and is not licensed to sell equity securities under the Exchange Act or otherwise. On information and belief Eisenschenk and Resource Equities are Commodity Trading Advisors ("CTA") registered with the National Futures Association. Eisenschenk is purportedly in the business of affecting transactions in securities for the accounts of others.

ANSWER:    Defendants admit the allegations contained in the first two sentences of paragraph 3. Defendants deny the remaining allegations contained in paragraph 3 and thus demand strict proof thereof.

4.    Defendant Thunder Bay Enterprises, LLC ("Thunder Bay") is an Illinois limited liability company with its principal place of business in Chicago, Illinois. At all times relevant herein, Eisenschenk was the principal and Manager of Thunder Bay.

ANSWER:    Defendants admit the allegations contained in paragraph 4.

5.    Defendant Resource Equities, LLC is an Illinois limited liability company with its principal place of business in Chicago, Illinois. On information and belief, at all times relevant herein, Eisenschenk was principal and Chief Executive Officer of Resource Equities, LLC.

ANSWER:    Defendants admit the allegations contained in paragraph 5.

**JURISDICTION**

6.    This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. §1331, since Count I arises from 15 U.S.C. §78(a). This Court has supplemental jurisdiction over state claims pursuant to 28 U.S.C. §1367.

ANSWER:    Defendants deny the allegations contained in paragraph 6 and thus demand strict proof thereof.

2

## VENUE

7.     Venue is proper in this Court pursuant to 28 U.S.C. §1391.  All Defendants reside within the geographical boundaries of the Court's judicial district.

ANSWER:     Defendants deny the allegations contained in the first sentence of paragraph 7 and thus demand strict proof thereof.  Defendants admit the allegations contained in the second sentence of paragraph 7.

## BACKGROUND

8.     In or about December 2005, Eisenschenk, individually and as agent for Thunder Bay and Resource Equities, directly solicited Plaintiffs to invest in a Private Investment in Public Equity offering ("PIPE transaction") relating to stock and related warrants for Provectus Pharmaceuticals, Inc. ("PVCT").  PVCT is a publicly traded corporation, whose equity securities are traded over the counter.

ANSWER:     Defendants deny the allegations contained in the first sentence of paragraph 8 and thus demand strict proof thereof.  Defendants admit the allegations contained in the second sentence of paragraph 8.

9.     In connection with the solicitation of funds from Plaintiffs for investment in the PIPE transaction, Defendants, through Eisenschenk, orally proposed to Plaintiffs that they would effectuate a purchase of PVCT stock and warrants on behalf of Plaintiffs.

ANSWER:     Defendants deny the allegations contained in paragraph 9 and thus demand strict proof thereof.

10.     The terms of the PVCT PIPE transaction orally proposed by Defendants to Plaintiffs Michael Lyon, as Trustee, and Richard Lane, were as follows:

      a.     Common stock will be sold at the price of $0.75 per share (the "Stock");

       b.       PVCT will grant to the purchaser of common stock the right to purchase fully paid and nonassessible shares of the company's common stock at all exercise price per share of $0.935 at a rate of 125% of the common stock shares purchase (the "Warrants");

       c.       Upon wiring funds from Plaintiffs to Resource Equities, the Stock and Warrants would be purchased by an entity controlled by Eisenschenk and transferred to Plaintiffs upon registration.

ANSWER:     Defendants deny the allegations contained in paragraph 10 and thus demand strict proof thereof.

11.    Defendants, through Eisenschenk, made additional oral representations regarding the PIPE transaction to each Plaintiff in or about December 2005. Those oral representations, include the following:

       a.       The Stock and Warrants were not subject to restrictions under SEC Rule 144 and could be exchanged, transferred or sold in the marketplace, or sold at any time after registration;

       b.       Upon receipt of invested funds from Plaintiffs to Defendants, such funds would be credited to each individual Plaintiff's account and would be used by Defendant Eisenschenk (as agent and fiduciary of Plaintiff) specifically to purchase PVCT Stock and Warrants, which would be issued and distributed to each Plaintiff upon registration of such securities;

       c.       All control and rights relating to the purchased Stock and Warrants would be vested exclusively to Plaintiffs and the Stock and Warrants would be issued directly to Plaintiffs.

ANSWER:     Defendants deny the allegations contained in paragraph 11 and thus demand strict proof thereof.

12.    In or about December 2005, Eisenschenk orally agreed with each Plaintiff that Eisenschenk would act as agent and fiduciary for Plaintiffs for the purpose of collecting and holding funds from Plaintiffs (to be wire transferred to accounts controlled by Eisenschenk) for the sole purpose of utilizing such funds to purchase PVCT Stock and Warrants for Plaintiffs on the terms described by Eisenschenk, all of which would be purchased for, and issued to,

Plaintiffs directly upon registration of the PVCT securities.  Eisenschenk did not disclose or otherwise advise Plaintiffs that he intended to retain any portion of Plaintiffs' investment, Stocks, Warrants or profits derived thereby for his own use.

ANSWER:    Defendants deny the allegations contained in paragraph 12 and thus demand strict proof thereof.

13.    In reliance on the oral representations of Defendants, in December 2005, Lyon (at the direction and request of Eisenschenk) wire transferred $200,000.00 to Resource Equities, LLC for the specific purpose of purchasing, for the Plan's account and for its sole benefit, 266,666 shares of PVCT common stock at $0.75 per share, together with 125% Warrant coverage at $0.935 per share.

ANSWER:    Defendants admit that Lyon wire transferred $200,000 to Resource Equities, LLC in December 2005.  Defendants deny the remaining allegations contained in paragraph 13 and thus demand strict proof thereof.

14.    In reliance on the oral representations of Defendants, in or about December 2005, Plaintiff Lane (at the direction and request of Eisenschenk) wire transferred $150,000.00 to Resource Equities for the specific purpose of purchasing, for Lane's individual account and for his sole benefit, 200,000 shares in PVCT common stock at $0.75 per share, together with 125% Warrant coverage pursuant to the Terms of Offering, at $0.935 per share.

ANSWER:    Defendants admit that Lane wire transferred $150,000 to Resource Equities, LLC in December 2005.  Defendants deny the remaining allegations contained in paragraph 14 and thus demand strict proof thereof.

15.    Defendants accepted and retained the funds wired into accounts controlled by Defendants.    However, Plaintiffs were advised by Eisenschenk in November 2007 that

Defendants failed to purchase the Stock and Warrants on behalf of Plaintiffs, and that Defendants intended to keep and control the Stock and Warrants purchased with Plaintiffs' funds for Defendants' own benefit. Defendants further refused to provide any evidence that the Stock and Warrants had been purchased for Plaintiffs, as agreed, nor have Defendants accounted for or otherwise disclosed the status of the funds, where the funds are currently held or how or to whom the Plaintiffs' funds were disbursed or otherwise utilized. Defendants disclosed for the first time in November 2007 that Eisenschenk intends to retain a portion of any profits derived from the Stock and Warrants as an undisclosed fee.

ANSWER:    Defendants admit the allegations contained in the first sentence of paragraph 15. Defendants admit that they have not provided any evidence to Plaintiffs regarding the purchase of stock or warrants on their behalf, and they admit that they have not accounted to Plaintiffs for or otherwise disclosed the status of the funds received from Plaintiffs, including where they are currently held or how or to whom said funds were disbursed or otherwise utilized. Defendants deny the remaining allegations contained in paragraph 15 and thus demand strict proof thereof. Further answering, Defendants deny that any agreement ever existed calling for the purchase of securities for the separate accounts of Plaintiffs and thus demand strict proof thereof.

16.    On information and belief Eisenschenk, through Thunder Bay, used the funds directed to Resource Equities by Plaintiffs to purchase PVCT Stock and Warrants for his own benefit and account, or otherwise converted the funds to his own use. Defendants have not issued, and continue to fail and refuse to issue, (or provide any evidence of Plaintiffs' purchase or ownership of) the Stock or Warrants to Plaintiffs. On information and belief, Eisenschenk intentionally and fraudulently converted, misappropriated and otherwise directed the funds

invested by Plaintiffs for his own use and benefit as part of a scheme and device to defraud Plaintiffs.

ANSWER:    Defendants admit that they have not issued and have not provided any evidence of Plaintiffs' purchase or ownership of PVCT stock or warrants to Plaintiffs. Defendants deny the remaining allegations contained in paragraph 16 and thus demand strict proof thereof.

17.    Upon inquiry to Defendants, Plaintiffs were advised that Thunder Bay directly holds and controls the PVCT Stock and Warrants were purchased with funds invested by Plaintiffs and that Eisenschenk intends to retain, manage and control the Stock and Warrants and that Eisenschenk further intends to retain 50% of profits derived from the Stock, and all of the Warrant for his own use upon liquidation of the Stock.

ANSWER:    Defendants deny the allegations contained in paragraph 17 and thus demand strict proof thereof.

18.    Plaintiffs have made inquiries to Defendants regarding the status of the Stock and Warrants, as well as the status of the funds wired to the entities controlled by Eisenschenk and demanded that the Stock and Warrants be issued to Plaintiffs.    Defendants have failed and refused to issue the Stock and Warrants to Plaintiffs or provide any information to Plaintiffs regarding the status of the invested funds or the status of the PVCT Stock and Warrants.

ANSWER:    Defendants admit that Plaintiffs have asked Defendants about the status of PVCT stock and warrants, as well as about the status of the funds Plaintiffs wired to Resource. Defendants further admit that they have not issued PVCT stock or warrants to Plaintiffs and that they have not provided any information to Plaintiffs regarding the status of said funds or about

the status of any PVCT stock or warrants. Defendants deny the remaining allegations contained in paragraph 18 and thus demand strict proof thereof.

### COUNT I
### (Securities Fraud under Section 10(b) of the Exchange Act)

19.     Plaintiffs restate and reincorporate paragraphs 1 through 18 above as paragraph 19 of Count I of Plaintiff' Complaint as if fully set forth herein.

ANSWER:    Defendants restate and reincorporate their answers to paragraphs 1 through 18 as and for their answer to paragraph 19 of this Count I as if they were fully set forth herein.

20.     Section 10(b) of the Exchange Act (28 U.S.C. § 78j(b)) prohibits sellers of securities from employing "any manipulative or deceptive device or contrivance in contravention of [SEC] rules and regulations ... "Securities Exchange Commission Rule 10(b)5 makes it unlawful to make material misstatements or to omit material facts in connection with the purchase or sale of any security.

ANSWER:    Defendants state that paragraph 20 states a legal conclusion, which requires no answer.

21.     The PIPE transaction proposed to Defendants, and the proposed sale of the PVCT Stock and Warrants to Plaintiffs constitutes a transaction involving the purchase and sale of securities under the Exchange Act.

ANSWER:    Defendants deny the allegations contained in paragraph 21 and thus demand strict proof thereof.

22.     Defendants, through Eisenschenk. intentionally, with the actual intent to deceive, engaged in a manipulative and deceptive scheme and device to defraud Plaintiffs in connection with the marketing and sale of PVCT securities. As part of that scheme and device, Defendants,

without limitation, made the following misrepresentations and omissions of material facts to Plaintiffs in connection with the sale of PVCT securities, all of which were false, misleading and calculated to deceive Plaintiffs:

    a.    Defendants failed to disclose that, at all times, Eisenschenk intended to use, and did use, funds transferred by Plaintiffs to entities controlled by Eisenschenk to purchase Stock and Warrants (for the sole purpose of investing in the PVCT PIPE transaction) for his own account and never intended to transfer the Stock and Warrants to Plaintiffs, respectively;

    b.    Defendants failed to disclose that Eisenschenk intended to retain 50% of all profits derived from funds invested by Plaintiffs in the PVCT PIPE transaction and all of the Warrants, for his own use;

    c.    Defendants failed to disclose that they did not, and never intended to, purchase the PIPE Securities for the Plaintiffs' account and that Defendants converted, and intended to fraudulently convert, and otherwise control, manage and retain the benefit and profits arising from any PVCT Stock and Warrants purchased with Plaintiffs' funds for Eisenschenk's accounts; and

    d.    Defendants failed to disclose that they intended to, and did, exercise possession, dominion and control over the funds transferred to entities and accounts controlled by Eisenschenk over the Stock and Warrants purchased with funds converted from and transferred by Plaintiffs.

ANSWER:    Defendants deny the allegations contained in paragraph 22 and thus demand strict proof thereof.

23.    On information and belief, as part of their scheme to defraud Plaintiffs, Defendants at all times intended (without any disclosure to Plaintiffs) to utilize Plaintiffs' funds to purchase PVCT Stock and Warrants for Defendants' account and to maintain control over the Stock and Warrants and retain profits and benefits therefrom, all to the detriment of Plaintiffs.

ANSWER:    Defendants deny the allegations contained in paragraph 23 and thus demand strict proof thereof.

24.    The representations and omissions of Defendants were made in connection with the purchase and sale of securities and with the intent to deceive and defraud Plaintiffs.

ANSWER:     Defendants deny the allegations contained in paragraph 24 and thus demand strict proof thereof.

25.     Defendants made such misrepresentations with the intent to induce Plaintiffs to transfer funds to Defendants with the specific purpose of converting Plaintiffs' funds for the use of Defendants.

ANSWER:     Defendants deny the allegations contained in paragraph 25 and thus demand strict proof thereof.

26.     Plaintiffs reasonably relied on the fraudulent representations of Defendants and were fraudulently induced to transfer funds to Defendants for what Plaintiffs were led to believe would be the purchase of PVCT Stock and Warrants, which would be issued to Plaintiffs.

ANSWER:     Defendants deny the allegations contained in paragraph 26 and thus demand strict proof thereof.

27.     As a direct and proximate result of Defendants' fraudulent scheme and misrepresentation, Plaintiffs have directly suffered damages, including, without limitation, the following:

    a.     Defendants retained, utilized and otherwise converted the funds transferred to Defendants for the purchase of PVCT Stock and Warrants for their own purpose and use to the detriment of Plaintiffs;

    b.     Plaintiffs have been deprived of the benefits, control, profits and increase of the value of Stock and Warrants; and

    c.     Defendants, by use of deception and manipulation, fraudulently induced Plaintiffs to transfer funds to Defendants, for which Plaintiffs received no consideration or benefit.

ANSWER:     Defendants deny the allegations contained in paragraph 27 and thus demand strict proof thereof.

28.    Defendants' actionable conduct, fraudulent scheme and fraudulent misrepresentations directly caused and resulted in economic loss to Plaintiffs, including, without limitation, deprivation of the increased value of the Stock and Warrants; the inability to control, transfer or sell the Stock in the marketplace for profit; loss of appreciation and profits derived from the Stocks and Warrants; and loss of the funds converted by Defendants for their own use. Therefore, Plaintiffs suffered direct economic loss as a result of Defendants' fraud and such losses were directly caused by Defendants' fraudulent conduct.

ANSWER:    Defendants deny the allegations contained in paragraph 28 and thus demand strict proof thereof.

29.    As of November 1, 2007, on information and belief, the value of PVCT share has increased from $0.75 per share to $1.75 per share. The value of Warrants (at the rate of 125% of the common stock shares purchased by each Plaintiff at $0.935 per share) also similarly increased, all to the detriment of Plaintiffs, who have been deprived of the benefit of ownership of the Stock and Warrants (including the right to possess and control the sale of) by the fraudulent scheme and misrepresentations of Defendants.

ANSWER:    Defendants deny the allegations contained in paragraph 29 and thus demand strict proof thereof.

WHEREFORE, Defendants pray that judgment enter in their favor and against Plaintiffs as to Count I of Plaintiffs' Complaint.

## COUNT II
### (Common Law Fraud)

30.    Plaintiffs restate and reincorporate paragraphs 1 through 29 above as paragraph 30 of Count II of Plaintiffs' Complaint as if fully set forth herein.

ANSWER:    Defendants restate and reincorporate their answers to paragraphs 1 through 29 as and for their answer to paragraph 30 of this Count II as if they were fully set forth herein.

31.    At all times herein, Defendants intended to deceive Plaintiffs and induce them to transfer funds to Defendants without providing Plaintiffs with any benefit or consideration and to otherwise deprive Plaintiffs of the ownership and control of the Stock and Warrants.   At all times, Defendants had a duty to disclose material facts relating to the Stock and Warrants to Plaintiffs.   In direct violation of that duty, Defendants made the following false and misleading representations of material facts to Plaintiffs:

a.    Defendants failed to disclose that, at all times, Eisenschenk intended to use, and did use, funds transferred by Plaintiffs to entities controlled by Eisenschenk to purchase Stock and Warrants (for the sole purpose of investing in the PVCT PIPE transaction) for his own account and never intended to transfer the Stock and Warrants to Plaintiffs, respectively;

b.    Defendants failed to disclose that Eisenschenk intended to retain 50% of all profits derived from funds invested by Plaintiffs in the PVCT PIPE transaction and all of the Warrants for his own use;

c.    Defendants failed to disclose that they did not, and never intended to, purchase the PIPE Securities for the Plaintiffs' account and that Defendants converted, and intended to fraudulently convert, and otherwise control, manage and retain the benefit and profits arising from any PVCT Stock and Warrants purchased with Plaintiffs' funds for Eisenschenk's accounts; and

d.    Defendants failed to disclose that they intended to, and did, exercise possession, dominion and control over the funds transferred to entities and accounts controlled by Eisenschenk over the Stock and Warrants purchased with funds converted from and transferred by Plaintiffs.

ANSWER:    Defendants deny the allegations contained in paragraph 31 and thus demand strict proof thereof.

32.    At all times herein, Defendants knew that Plaintiffs would rely on their false and misleading representations and intended such reliance.

ANSWER:    Defendants deny the allegations contained in paragraph 32 and thus demand strict proof thereof.

33.    Plaintiffs reasonably relied on Defendants' representations to their detriment and, in reliance thereon, Plaintiffs transferred funds to Defendants for the purpose of investing in, and purchasing Stock and Warrants pursuant to the PIPE transaction described by Eisenschenk.

ANSWER:    Defendants deny the allegations contained in paragraph 33 and thus demand strict proof thereof.

34.    As a direct and proximate result of Defendants' false and misleading statements, Defendants have incurred, and will continue to incur, substantial damages, including, without limitation:

    a.    Defendants retained, utilized and otherwise converted the funds transferred to Defendants for the purchase of PVCT Stock and Warrants for their own purpose and use to the detriment of Plaintiffs;

    b.    Plaintiffs have been deprived of the benefits, control, profits and increase of the value of Stock and Warrants; and

    c.    Defendants, by use of deception and manipulation, fraudulently induced Plaintiffs to transfer funds to Defendants, for which Plaintiffs received no consideration or benefit.

ANSWER:    Defendants deny the allegations contained in paragraph 34 and thus demand strict proof thereof.

WHEREFORE, Defendants pray that judgment enter in their favor and against Plaintiffs as to Count II of Plaintiffs' Complaint.

## COUNT III
### (Conversion)

35.    Plaintiffs restate and reincorporate paragraphs 1 through 34 above as paragraph 35 of Count III of Plaintiffs' Complaint as if fully set forth herein.

ANSWER:    Defendants restate and reincorporate their answers to paragraphs 1 through 34 as and for their answer to paragraph 35 of this Count III as if they were fully set forth herein.

36.    By fraudulently and deceptively inducing Plaintiff to transfer funds to Defendants, and failing to utilize those funds for the purchase of the Stock and Warrants, Defendants fully asserted control and dominion over Plaintiffs' personal property, in which Plaintiff has all immediate, absolute and unconditional right to possession at all times herein, the funds were specifically earmarked to be used to purchase the Stock and Warrants.

ANSWER:    Defendants deny the allegations contained in paragraph 36 and thus demand strict proof thereof.

37.    In the alternative, in the event Defendants purchased PVCT Stock and Warrants with the funds invested by Plaintiffs for that purpose, Defendants fully asserted control find dominion over the Stock and Warrants, which are Plaintiffs' personal property, in which Plaintiff has an immediate, absolute and unconditional right to possession.

ANSWER:    Defendants deny the allegations contained in paragraph 37 and thus demand strict proof thereof.

38.    Plaintiffs have demanded return of the Stock and Warrants and have absolute rights thereto.  As a direct result of Defendants' conversion oft their personal property, Plaintiffs have suffered substantial damages arising from the loss of control and use of such property.

ANSWER:    Defendants deny the allegations contained in paragraph 38 and thus demand strict proof thereof.

WHEREFORE, Defendants pray that judgment enter in their favor and against Plaintiffs as to Count III of Plaintiffs' Complaint.

## COUNT IV
### (Violation of Illinois Deceptive Trade Practices Act)

39.    Plaintiffs restate and reincorporate paragraphs 1 through 38 above as paragraph 39 of Count IV of Plaintiffs' Complaint as if fully set forth herein.

ANSWER:    Defendants restate and reincorporate their answers to paragraphs 1 through 38 as and for their answer to paragraph 39 of this Count IV as if they were fully set forth herein.

40.    Plaintiffs are consumers as defined in the Illinois Consumer Fraud and Deceptive Trade Practices Act ("'Act"). Section 2 of the Act (815 ILCS 505/2) provides as follows:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

ANSWER:    Defendants state that paragraph 40 states a legal conclusion, which requires no answer.

41.    Defendants false, misleading and fraudulent representations to Plaintiffs relating to the PIPE transaction, and their scheme and device to deceive and defraud Plaintiffs in connection with that transaction, constitutes a violation of Section 2 of the Act. Defendants' actionable conduct, fraudulent scheme and fraudulent misrepresentations directly caused and resulted in economic loss to Plaintiffs, including, without limitation, deprivation of the increased value of the Stock and Warrants, retention by Defendants without disclosure of profits derived from the Stock and Warrants, the inability to transfer or sell the Stock in the marketplace for

profit; and loss of the use of the funds wired to Defendants and converted by Defendants for their own use. Therefore, Plaintiffs suffered direct economic loss as a result of Defendants' fraud and such losses were directly caused by Defendants' fraudulent conduct.

ANSWER:    Defendants deny the allegations contained in paragraph 41 and thus demand strict proof thereof.

42.    As a direct and proximate result of Defendants' false and misleading statements, Defendants have incurred, and will continue to incur, substantial damages, including, without limitation:

a.    Defendants retained, utilized and otherwise converted the funds transferred to Defendants for the purchase of PVCT Stock and Warrants for their own purpose and use;

b.    Plaintiffs have been deprived of the benefits, control, profits and increase of the value of Stock and Warrants that Defendants represented would be purchased by Eisenschenk and the entities he controls for their sole and exclusive benefit; and

c.    Defendants, by use of deception and manipulation, fraudulently induced Plaintiffs to transfer funds to Defendants, for which Plaintiffs received no consideration or benefit.

ANSWER:    Defendants deny the allegations contained in paragraph 42 and thus demand strict proof thereof.

WHEREFORE, Defendants pray that judgment enter in their favor and against Plaintiffs as to Count IV of Plaintiffs' Complaint.

## COUNT V
### (Illinois Securities Law)

43.    Plaintiffs restate and reincorporate paragraphs 1 through 42 above as paragraph 43 of Count V of Plaintiffs' Complaint as if fully set forth herein.

ANSWER:    Defendants restate and reincorporate their answers to paragraphs 1 through 42 as and for their answer to paragraph 43 of this Count V as if they were fully set forth herein.

44.    Defendants' activities in offering and selling the PVCT Stock and Warrants to Plaintiffs constitutes the offer and sale of a security under Section 2.1, 2.5 and 2.5a of the Illinois Securities law of 1953 (815 ILCS 5, *et seq.*) (the "Illinois Act").

ANSWER:    Defendants deny the allegations contained in paragraph 44 and thus demand strict proof thereof.

45.    Section 12F of the Illinois Act provides that it shall be a violation of the Act for any person to engage in any transaction practice or cause of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof.

ANSWER:    Defendants state that paragraph 45 states a legal conclusion, which requires no answer.

46.    Section 12G of the Illinois Act provides that it shall be a violation of the Act for any person to obtain money or property through the sale of securities by means of an untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances, not misleading.

ANSWER:    Defendants state that paragraph 46 states a legal conclusion, which requires no answer.

47.    Section 121 of the Illinois Act provides that it shall be a violation of the Act to employ any advice, scheme or artifice to defraud any client or prospective client or to engage in any practice which is fraudulent, deceptive or manipulative.

ANSWER:     Defendants state that paragraph 47 states a legal conclusion, which requires no answer.

48.     Defendants' misrepresentations and omissions constitute violations of Sections 12F, 12G and 121 of the Illinois Exchange Act.

ANSWER:     Defendants deny the allegations contained in paragraph 48 and thus demand strict proof thereof.

WHEREFORE, Defendants pray that judgment enter in their favor and against Plaintiffs as to Count V of Plaintiffs' Complaint.

### COUNT VI
### (Breach of Contract)

49.     Plaintiffs restate and reincorporate paragraphs 1 through 48 above as paragraph 49 of Count VI of Plaintiffs' Complaint as if fully set forth herein.

ANSWER:     Defendants restate and reincorporate their answers to paragraphs 1 through 48 as and for their answer to paragraph 49 of this Count VI as if they were fully set forth herein.

50.     In or about December 2006, Defendants and Plaintiffs orally agreed as follows:

a.     Plaintiffs Lyon, as Trustee of the Plan, and Lane agreed to transfer $200,000.00 and $150,000.00, respectively, to Defendants; and

b.     Defendants agreed to utilize those funds to invest in the PIPE transaction, as agent and fiduciary of Plaintiffs, by purchasing Stock (at $.75 per share) and Warrants for the account of Plaintiffs and securing PVCT Stock and Warrants, which would be directly to Plaintiffs, without restriction.

ANSWER:     Defendants deny the allegations contained in paragraph 50 and thus demand strict proof thereof.

51.     Defendants breached the agreement by accepting funds from Plaintiffs, which were specifically intended to purchase Stock and Warrants on behalf of, and for the accounts of,

Plaintiffs, but misappropriating such funds for Defendants' own use without effectuating the purchase of Stock and Warrants, effectuating the transfer or the Stock and Warrants to Plaintiffs, as agreed.

ANSWER:    Defendants deny the allegations contained in paragraph 51 and thus demand strict proof thereof.

52.    As a direct and proximate result of Defendants' breach of their agreement with Plaintiffs, Defendants' actionable conduct, fraudulent scheme and fraudulent misrepresentations directly caused and resulted in economic loss to Plaintiffs, including, without limitation, deprivation of the increased value of the Stock and Warrants, the inability to transfer or sell the Stock in the marketplace for profit; and loss of the funds converted by Defendants for their own use. Therefore, Plaintiffs suffered direct economic loss as a result of Defendants' fraud and such losses were directly caused by Defendants' fraudulent conduct.

ANSWER:    Defendants deny the allegations contained in paragraph 52 and thus demand strict proof thereof.

53.    Plaintiffs performed all obligations they were required to perform under the Contract with Defendants.

ANSWER:    Defendants deny the allegations contained in paragraph 53 and thus demand strict proof thereof.

WHEREFORE, Defendants pray that judgment enter in their favor and against Plaintiffs as to Count VI of Plaintiffs' Complaint.

## COUNT VII
### (Injunctive Relief)

54.    Plaintiffs restate and reincorporate paragraphs 1 through 53 above as paragraph 54 of Count VII of Plaintiffs' Complaint as if fully set forth herein.

ANSWER:    Defendants restate and reincorporate their answers to paragraphs 1 through 53 as and for their answer to paragraph 54 of this Count VII as if they were fully set forth herein.

55.    Plaintiffs have a clear and ascertainable right to the relief arising from Defendant's breach of Contract and violations of the Securities Exchange Act, Illinois Deceptive Trade Practice Act and Illinois Securities Law.

ANSWER:    Defendants deny the allegations contained in paragraph 55 and thus demand strict proof thereof.

56.    As the direct result of either (a) Defendant's failure and refusal to utilize Plaintiffs' funds to invest in the PVCT PIPE transaction on behalf of Plaintiffs; (b) Defendants misappropriation and conversion of the funds transferred to Plaintiffs for that purpose, and (c) Defendants' failure to deliver the Stock and Warrant to Plaintiffs, Defendants' actionable conduct, fraudulent scheme and fraudulent misrepresentations directly caused and resulted in irreparable harm to Plaintiffs, including, without limitation, deprivation of the Stock and Warrants the inability to transfer or sell the Stock in the marketplace for profit; and loss of the benefits and control derived from ownership of the Stock and Warrants, all directly caused by Defendants' fraudulent conduct.

ANSWER:    Defendants deny the allegations contained in paragraph 56 and thus demand strict proof thereof.

57.    As a direct and proximate result of Defendants' failure to provide Plaintiffs with issued PVCT Stock and Warrants, which are of unique character, Plaintiffs will continue to suffer irreparable harm for which there is no adequate remedy at law.

ANSWER:    Defendants deny the allegations contained in paragraph 57 and thus demand strict proof thereof.

58.    Without granting injunctive relief, Plaintiffs have has no adequate remedy at law because the Stock and Warrants are unique, marketable securities.

ANSWER:    Defendants deny the allegations contained in paragraph 58 and thus demand strict proof thereof.

WHEREFORE, Defendants pray that judgment enter in their favor and against Plaintiffs as to Count VII of Plaintiffs' Complaint.

### COUNT VIII
### (Constructive Trust)

59.    Plaintiffs restate and reincorporate paragraphs 1 through 58 above as paragraph 59 of Count VIII of Plaintiffs' Complaint as if fully set forth herein.

ANSWER:    Defendants restate and reincorporate their answers to paragraphs 1 through 58 as and for their answer to paragraph 59 of this Count VIII as if they were fully set forth herein.

60.    Defendants acted as a fiduciary of Plaintiffs regarding Plaintiffs transfer of funds to Defendants that were intended to be utilized to purchase of the over stock as warrants.

ANSWER:    Defendants deny the allegations contained in paragraph 60 and thus demand strict proof thereof.

61.    As a result of Defendants actual fraudulent conduct, violations of fiduciary duties and other wrongdoing relating to their misappropriation of Plaintiffs funds, all of which has unjustly enriched Defendants, Plaintiffs are entitled to the imposition of a constructive trust on Stock and Warrants in possession of Defendants purchased with Plaintiffs' funds, and any profits, rights or privileges derived there from.

ANSWER:    Defendants deny the allegations contained in paragraph 61 and thus demand strict proof thereof.

62.    Principles of equity and fairness dictate that Defendants should not retain the benefit of their fraudulent conduct by maintaining domain and control over Stock and Warrants purchased with Plaintiffs funds.

ANSWER:    Defendants deny the allegations contained in paragraph 62 and thus demand strict proof thereof.

63.    Because of the unique character of the Stock and Warrants, Plaintiffs have no adequate remedy at law.

ANSWER:    Defendants deny the allegations contained in paragraph 63 and thus demand strict proof thereof.

64.    As a result of Defendants fraudulent conduct, Plaintiffs continue to suffer irreparable harm and damage from the deprivation of control over the Stock and Warrants.

ANSWER:    Defendants deny the allegations contained in paragraph 64 and thus demand strict proof thereof.

WHEREFORE, Defendants pray that judgment enter in their favor and against Plaintiffs as to Count VIII of Plaintiffs' Complaint.

### FIRST AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the applicable statues of limitation.

### SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the statute of frauds.

### THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims fail to state fraud with sufficient specificity.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of laches.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs are guilty of unclean hands as to the matters alleged in the Complaint and, therefore, are barred from seeking equitable relief.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by their failure to mitigate their damages, if any.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs are estopped, by law or conduct, from asserting any claim for relief against Defendants.

Respectfully submitted,

SIGMUND EISENSCHENK, RESOURCE
EQUITIES, LLC AND THUNDER BAY
ENTERPRISES, LLC

By:    /s/ Daniel C. Curth
       One of their attorneys

Leland W. Hutchinson (ARDC #1294873)
Daniel C. Curth (ARDC #6229090)
FREEBORN & PETERS LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 360-6000

1600669v1/26200-0005